UNITED STATES BANKRUPT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: | ) |
| | ) |
| Mark N. Head | ) Case No: 09-15856-SSM |
| | ) |
| Debtor | ) |
| | ) |
| JPMORGAN CHASE BANK, N.A. | ) |
| | ) |
| Plaintff, | ) Adversary No: |
| | ) |
| v. | ) |
| | ) |
| MARK N. HEAD | ) |
| | ) |
| Defendant. | ) |

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

COMES NOW your Plaintiff, JPMorgan Chase Bank, N.A., by counsel, and for its Complaint to Determine Dischargeability of Debt, under 11 U.S.C. §523(a)(2) and (a)(6), states as follows:

1.      This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1334.

2.      This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

3.      The Defendant, Mark N. Head, is a debtor in a pending bankruptcy case, filed in this Court, Case No: 09-15856.

4.      On or about October 23rd, 2007, Defendant entered into a Virginia Retail Installment Contract (hereinafter referred to as "Agreement") with HBL, LLC, for the purchase of a 2008 Porsche 911 Turbo, VIN WPOAD29988S783462 (hereinafter referred to as "Porsche.") As part of the same Agreement, an assignment of the Agreement was made to JPMorgan Chase Bank, N.A. A copy of the Agreement is attached hereto as Exhibit "A," and incorporated herein by reference.

5.      According to the terms of the Agreement, Defendant granted Plaintiff a purchase money security interest in the Porsche, and agreed to repay the sum of $129,658.70, plus interest at the rate of 9.29% per annum.

6. On or about December 29, 2007, Defendant requested that the Plaintiff provide him with a payoff quote for the loan, which the Plaintiff so provided.

7. Also on December 29, 2007, the Defendant caused an electronic payment to be made to the Plaintiff, in the amount of $126,000.00.

8. This payment did not payoff the balance of the loan. On January 6, 2008, Defendant requested a payment history from the Plaintiff. Defendant thereafter made a payment of $2,375.00, which satisfied the loan in full.

9. On January 10, 2008, the Plaintiff released its lien on the title. On that same date, the payment of $126,000.00 was reversed.

10. Having secured release of the lien on the title, Defendant secured a loan from Fairfax County Federal Credit Union, and granted the Credit Union an security interest in the Porsche.

11. Plaintiff was unaware that Defendant had granted a security interest in the Porsche to a third party.

12. Defendant continued to make sporadic payments on the loan to the Plaintiff through August, 2008. When he ceased making payments, Plaintiff called Defendant. Plaintiff reached the Defendant on or about October 17, 2008. At this time, Defendant advised that he was having a difficult financial situation, and the parties discussed a payment plan and possible voluntary repossession of the collateral. At no time during that phone call, or any subsequent phone call, in which voluntary repossession was discussed, did the Defendant ever advise that he had granted a third party a security interest in the Porsche.

13. The Defendant owes the Plaintiff the principal sum of $115,239.19 with interest at the contract rate of 9.29% per annum, accruing from the date of last payment of October 30, 2008.

14. The value of the Porsche at the time of these events will be proven at trial.

15. Plaintiff is unaware of the current location of the Porsche, and believes that it may have been sold by the Defendant.

## COUNT 1 - ACTUAL FRAUD 11 U.S.C. §523(a)(2)(A)

15.　　Plaintiff realleges and reincorporates paragraphs 1 through 14.

16.　　Defendant made the representation that he was making a payment, and that such payments would pay off the loan.

17.　　That at the time the representation was made, the Defendant knew the representation was false, in that the payment would be reversed, and would not in fact pay off the loan.

18.　　That the Defendant made the false representation with the intention of deceiving the creditor, thereby inducing the Plaintiff to release its lien on the Porsche.

19.　　That the Plaintiff actually and justifiably relied on such representation.

20.　　That the Plaintiff sustained the alleged loss and damage as the proximate result of the false representation. By releasing the lien, the Plaintiff became an unsecured creditor, and was unable to repossess its collateral, thereby satisfying the loan.


## COUNT 2 - WILLFUL AND MALICIOUS INJURY TO THE PROPERTY
## PLAINTIFF'S PROPERTY 11 U.S.C. 523 (a)(2)(6)

21.　　Plaintiff realleges and reincorporates paragraphs 1 through 14.

22.　　Defendant did willfully and maliciously cause injury to the property of the Plaintiff.

23.　　By causing the Plaintiff to release its lien on the title, Defendant did deliberately and intentionally in knowing disregard cause the Plaintiff to lose its security interest.

24.　　Defendant caused further injury by obtaining a new loan with a different creditor, and providing the Porsche as collateral for the subsequent loan.

25.　　Defendant caused additional damage when he sold the Porsche.

26.　　During this time period, Defendant concealed the true status of the Porsche and its title from the Plaintiff, by leading the Plaintiff to believe that the Plaintiff's lien was still on the title, by

not disclosing the fact that a different creditor had possession of the title, and by not telling the Plaintiff that the vehicle had been sold.

WHEREFORE the Plaintiff, JPMorgan Chase Bank, N.A., by counsel, prays this Court to order that the debt owed by the Defendant, Mark N. Head, to the Plaintiff as described herein is a nondischargeable debt pursuant to 11 U.S.C. §523(a)(2) and (a)(6), that this Court enter a Judgment for the Plaintiff against the Defendant in the amount of One Hundred Fifteen Thousand, Two Hundred Thirty Nine Dollars and Nineteen Cents ($115,239.19), with interest at the contract rate of 9.29% per annum accruing from the date of last payment of October 30, 2008, or such other amount as determined by the Court, and for all other and further relief that this Court deems just and proper

JPMORGAN CHASE BANK, N.A.

By:_____
Of Counsel

Matthew D. Huebschman (VSB # 44181)
SHENANDOAH LEGAL GROUP, P.C.
310 S. Jefferson Street
Roanoke, Virginia 24011
540-344-4490, ext 20
fax 540-343-0185
mhuebsch@shenlegal.com

**CHASE**    VIRGINIA RETAIL INSTALLMENT CONTRACT

Date: 10/12/2007

| Buyer (and Co-Buyer) (Name and Address) (include County and Zip Code) | Seller (Creditor) (Name and Address) |
|---|---|
| MARY HEAD 11714 LAKE FOREST DR RESTON FAIRFAX VA 20194-2166 | KDL, LLC 8545 LEESBURG PIKE VIENNA VA 22182 |

WHO IS BOUND: You, the buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing below, you choose to buy the vehicle on credit under the terms on the front and back of this Contract and are individually liable for any amount due. This Contract is not contingent upon obtaining financing on terms which are satisfactory to the parties in this Contract. We, "us" and "our" mean the Seller named above and, after payment and acceptance, the Seller's assignee, JPMorgan Chase Bank, N.A., acting on its own or as agent for all subsequent assignees and any subsequent assignee.

DESCRIPTION OF VEHICLE: You agree to buy and we agree to sell the following vehicle:

| New, Used or Demo | Year | Make and Model | Body Type | Vehicle Identification No. | No. of Cyl. | Use for Which Purchased |
|---|---|---|---|---|---|---|
| NEW | 2008 | PORSCHE 911 TURBO CC | TURBO COUPE | WP0AB299885783462 | | ☐ personal ☐ business ☐ agricultural |

If truck – Describe body, gross vehicle weight and major items of equipment sold

NOTICE TO BUYERS OF USED OR DEMONSTRATION VEHICLES: The information you see on the window form for this vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS | TOTAL SALE PRICE |
|---|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all payments as scheduled | The total cost of your purchase on credit, including your downpayment of $ 3000.00 |
| 9.25 % | $ 35963.94 | $ 298658.70 | $ 388622.64 | $ 173622.64 |

PAYMENT SCHEDULE: Your payment schedule will be 72 monthly payments of $ 2355.87 each due on the same day of each month, starting on 11/22/2007

PREPAYMENT: If you pay off this Contract early, you will not have to pay a penalty.
SECURITY: You are giving us a security interest in the motor vehicle being purchased.
LATE FEE: If a payment is more than 7 days late, you may be charged 5% of the full amount of the installment due.
OTHER TERMS: Please read this Contract, including the reverse side, for additional information on security interests, nonpayment, default and your right to require prepayment in full before the scheduled maturity date.

### ITEMIZATION OF THE AMOUNT FINANCED

| | | | |
|---|---|---|---|
| 1. | Cash Price (including any accessories, services, and taxes). | | $ 132634.70 |
| 2. | Downpayment | | |
| | A. Net Trade-in | $ N/A | |
| | Your Trade-in is a _____ _____ _____ | | |
| | Year Make Model | | |
| | B. Cash Downpayment | $ 3000.00 | |
| | C. Total Downpayment (2A + B) | | $ 3000.00 |
| 3. | Unpaid Balance of Cash Price (1 – 2C) | | $ 129634.70 |
| 4. | Other Charges Including Amounts Paid to Others on Your Behalf: | | |
| | A. Cost of Optional Credit Insurance for the Term(s) Specified in the "Credit Insurance" Paragraph of this Contract Paid to the Insurance Company(s) Named Below: | | |
| |     Disability, Accident and Life $ _____ Health $ _____ N/A _____ | $ N/A | |
| | B. Official Fees Paid to Government Agencies | $ N/A | |
| | C. Taxes Not Included in Cash Price | $ N/A | |
| | D. Government License and/or Registration Fees (Itemize) | $ 14.00 | |
| | E. Government Certificate of Title Fees | $ 10.00 | |
| | F. Other Charges (Describe who will receive payment and purpose) | | |
| |     to FIBER _____ for Optional Gap Coverage | $ N/A | |
| |     to _____ for _____ | $ N/A | |
| | G. Total Other Charges and Amounts Paid to Others on Your Behalf (4A + B + C + D + E + F) | | $ 24.00 |
| 5. | Amount Financed (Unpaid Balance) (3 + 4G) | | $ 129658.70 |

We may retain, or receive, a portion of these amounts.

PROMISE TO PAY: You promise to pay us the Amount Financed shown above, plus a Finance Charge determined by applying a daily rate of 1/365th of the Annual Percentage Rate shown above to the unpaid balance of the Amount Financed each day.

PAYMENTS BEFORE OR AFTER DUE DATE: This is a simple interest Contract. This means that the amount of the Finance Charge shown above may vary depending upon when your payments are received...

LOCATION OF VEHICLE: The vehicle will be kept at the above address of the Buyer, unless another address is listed

_____
(Street and Town)

CREDIT INSURANCE: Credit life and credit disability, accident and health insurance are not required to obtain credit and will not be provided under this Contract unless you sign for them and agree to pay the additional cost. The policies or certificates issued by the Company(s) named will describe the terms and conditions in further detail.
By signing below, you affirmatively elect insurance under federal laws, and acknowledge receipt of separate enrollment forms under Virginia law.

☐ Life   ☐ Buyer   ☐ Co-Buyer   ☐ Both) at a premium of $ ____ N/A ____ for a term of ____
Credit Life Insurance will pay your debt on this Contract up to $ ____ N/A ____
☐ Disability, Accident and Health (Buyer Only) at a premium of $ ____ N/A ____ for a term of ____
Credit disability, accident and health insurance will pay your debt on this Contract up to $ ____ N/A ____
The name of the insurer is _____ of _____

| Name | Home Office Address |
|---|---|

_____ _____ _____
Buyer Signature     Date     Co-Buyer Signature     Date

## No Liability Insurance included

PROPERTY INSURANCE: Insurance coverage for loss or damage to the vehicle (collision, fire and theft) is required and you have the option of furnishing the required insurance either through your existing policies or you may purchase equivalent insurance coverage from anyone you wish, who is acceptable to us. If you elect to purchase this coverage through the Seller,

it will be furnished by _____ at a premium of $ ____ N/A ____ , but such charge is not included in the initial term of ____ .

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain his right to receive a part of the Finance Charge.

BY SIGNING THIS CONTRACT, YOU ACKNOWLEDGE THAT IT CONTAINS AN "AGREEMENT TO ARBITRATE DISPUTES" ON THE REVERSE SIDE, THAT YOU HAVE READ IT AND AGREE TO ITS TERMS.
IMPORTANT: READ THE ADDITIONAL TERMS ON REVERSE SIDE BEFORE SIGNING BELOW.
NOTICE TO BUYER: Do not sign this Contract if there are blank spaces. You acknowledge that you have received a copy of this Contract prior to signing with all blanks filled in and that you have read it and understand it. You are also entitled to receive a copy of this Contract signed by all parties. Keep it to protect your legal rights.

Buyer Signs _____ Co-Buyer Signs _____

By signing here, the Seller agrees to the terms of this Contract and assigns this Contract to Seller's assignee under the terms agreed to by Seller and Seller's assignee.

Seller (Creditor) Signs _____ KDL LLC _____ By _____ Title BUSINESS MANAGER

FORM NO. C419-VIRGINIA RETAIL (Rev. 2/99)   Pg. 1/2   (2 Pads) CHASE COPY

EXHIBIT

A

PENGAD 800-631-6989

OWNERSHIP AND RISK OF LOSS. You agree to pay us all you owe under this Contract even if the vehicle is damaged, destroyed or missing. You agree not to sell, transfer, or remove the vehicle from the United States for more than thirty (30) days without our written permission. You agree to maintain the vehicle in good condition and repair, except wear and tear caused by ordinary use, and to permit us to inspect the vehicle at any reasonable time. You agree not to expose the vehicle to misuse or confiscation, or to permit anyone to use the vehicle in any unlawful purpose. You agree to keep the vehicle free of any claims and secured by any governmental authority. You agree not to rent the vehicle to others or to carry passengers for hire. If we quit any repair bills, storage bills, taxes, or other charges on the vehicle, you agree to repay the amount when we ask for it. You will immediately notify us of any change in your address or the address where the vehicle is regularly located. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date we pay it at the Annual Percentage Rate in this Contract until payment in full.

SECURITY INTEREST. You are giving us a security interest in the vehicle being purchased; any proceeds of the vehicle; and any accessories, equipment, and replacement parts installed in the vehicle. The security interest also covers: (1) insurance premiums or other products financed in this Contract; (2) proceeds of any insurance policies on the vehicle; and (3) proceeds of any insurance policies on your life or health which are financed in this Contract. These secure payment of all amounts you owe under this Contract and of any transfer, renewal, extension, refinancing, modification, or assignment of this Contract. They also secure your other agreements in this Contract. For purposes of this Contract, we agree to forego any security interest you may have given under another agreement which secures your obligation under this Contract. You will cause or cooperate in causing our security interest (lien) on the vehicle to be shown on the title. This will not allow any subordinate or other liens to be placed on the vehicle.

REQUIRED PHYSICAL DAMAGE INSURANCE. You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this Contract. You will make us loss payee and provide evidence of insurance. If the vehicle is lost or damaged, you agree that we can use any insurance settlement either to repair the vehicle or to apply to your debt.

OPTIONAL GUARANTEED AUTO PROTECTION (GAP) COVERAGE. GAP coverage is not required to obtain credit and you may purchase it from any company you wish which is authorized to sell such coverage and is acceptable to the Seller. If you elect to purchase Gap coverage under this Contract, it will be furnished by the Gap company and at the cost stated in Paragraph 4F of the Itemization of the Amount Financed located on the reverse side of this Contract. The contract issued by the Gap company will describe the terms and conditions of that coverage. To purchase Gap coverage under this Contract, initial the space provided in Paragraph 4F of the Itemization of the Amount Financed located on the reverse side of this Contract. That coverage will not be provided if you do not initial in the appropriate space provided.

INSURANCE CHARGES RETURNED TO US. If any charge for required insurance is returned to us, it may be credited to your account or used to buy similar insurance or insurance which covers only our interest in the vehicle. Any refund on optional insurance or other products financed in this Contract will be credited to your account or returned to you.

DEFAULT. You are in default if you fail to pay any payment within 10 days after it is due according to the payment schedule or if you break any other agreements in this Contract.

REQUIRED REPAYMENT IN FULL BEFORE THE SCHEDULED DATE. If you are in default, we can demand that you pay all you owe on this Contract at once. If you fail to pay, you will be liable for Finance Charges at the greater of the Annual Percentage Rate that applies to this Contract (but not to exceed the highest rate permitted by law), or the highest rate permitted by law.

REPOSSESSION OF THE VEHICLE. Repossession means our taking the vehicle from you. If you are in default, we can repossess the vehicle from you. To take the vehicle we can enter your property, or the property where it is stored, so long as it is done peacefully. If there is any personal property in the vehicle, such as clothing, we can store it for you. Any accessories, equipment or replacement parts will remain with the vehicle.

GETTING THE VEHICLE BACK AFTER REPOSSESSION. If we repossess the vehicle, you have the right to get it back (redeem) by paying the entire amount you owe on the Contract (not just past due payments) plus the cost of taking and storing the vehicle and other expenses that we have had. Your right to redeem will end when the vehicle is sold.

SALE OF THE REPOSSESSED VEHICLE. We will send you a written notice of sale at least 10 days before selling the vehicle. If you do not redeem the vehicle by the date on the notice, we can sell it. We will use the net proceeds of the sale to pay all or part of your debt.

The net proceeds of sale will be figured this way. Any charges for taxing, storing, cleaning, advertising and selling the vehicle, any attorney's reasonable fees, any court costs and any other charges permitted by law will be subtracted from the selling price, to the extent allowed by law.

If you owe us less than the net proceeds of sale, the difference is owed you, unless someone else has an interest in the vehicle. For example, we may be required to pay a lender who has given you a loan and also taken a security interest in the vehicle.

If you owe more than the net proceeds of sale, to the extent allowed by law you will pay us the difference between the net proceeds of sale and what you owe when we ask for it. If you do not pay this amount when asked, you may also be charged Finance Charges at the greater of the Annual Percentage Rate that applies to this Contract (but not to exceed the highest rate permitted by law), or the highest rate permitted by law.

COLLECTION COST. If we hire an attorney to collect what you owe, you will pay the attorney's reasonable fees and any court costs.

RETURN CHECK CHARGE. If any check, draft or other item you send in payment of your obligation on this Contract is returned unpaid for any reason, we may charge you, at our option and you agree to pay a returned check fee of $35.

ENTIRE CONTRACT. This is the whole contract. Any change to this contract must be in writing and signed by us. No oral agreements are binding.

DELAY IN ENFORCING RIGHTS. We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, we can extend the time for making some payments without extending others. If any provision of this Contract conflicts with applicable law, it will be considered modified to comply with that law and the remaining provisions shall continue.

WARRANTIES SELLER DISCLAIMS. Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this Contract, the Seller makes no warranties, express or implied on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

CREDIT REPORTING. We may obtain a consumer credit report from one or more consumer credit reporting agencies (credit bureaus) in connection with your application and as otherwise allowed by applicable law. You agree that we may also verify your employment, income, assets and debts.

RIGHT TO OFFSET. To the extent provided by operation of law, if you are in default, we have the right to pay all or part of the amounts owed under this Contract from any deposits or funds that you have with us without telling you ahead of time.

GOVERNING LAW. This Contract is governed by the applicable laws of the State of Virginia, to the extent that such laws are not preempted by the laws of the United States.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this Contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this Contract.

## AGREEMENT TO ARBITRATE DISPUTES

The following Arbitration Agreement can significantly affect your rights in any dispute with us. Please read it carefully before signing this Contract.

1. IF EITHER OF US CHOOSES, ANY CLAIM OR DISPUTE BETWEEN US (AS DEFINED BELOW) WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.

2. IF EITHER OF US CHOOSES TO ARBITRATE, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS OR OTHER REPRESENTATIVE ON BEHALF OF OTHER PERSONS OR AS A CLASS MEMBER OR OTHER REPRESENTED PERSON ON ANY CLASS CLAIM OR OTHER REPRESENTATIVE TYPE OF CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS OR OTHER REPRESENTATIVE ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, this Contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class or other representative type of action. You expressly waive any right you may have to arbitrate a class or other representative type of action. You may choose any one of the following arbitration organizations: the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org) or the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com). The arbitration shall be conducted in accordance with the Arbitration Agreement and, unless otherwise provided herein, in accordance with the rules of the arbitration organization you chose the "Arbitration Rules"). You may get a copy of the Arbitration Rules by contacting the arbitration organization or visiting its website.

The arbitrator shall be an attorney or retired judge selected in accordance with the Arbitration Rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside. The arbitrator's decision shall be in writing and either party may appeal the arbitrator's decision through the arbitration organization you chose. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $1,500. We will also pay any additional amount of such fees that the arbitrator determines we must pay in order to make this Agreement to Arbitrate Disputes enforceable. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. The arbitrator's award shall be final and binding on all parties, except that the losing party may request a new arbitration if allowed by the Arbitration Rules. This Agreement to Arbitrate Disputes, and any arbitration conducted hereunder, shall be governed by the Federal Arbitration Act (9 U.S.C. § et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek individual remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This agreement shall survive any termination, payoff or transfer of this Contract. If any part of this Agreement to Arbitrate Disputes, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

CAPAHIGANHSTAR, IRS Ioanaf.SC, HRI-IC his PM aut rev apr
© 2000, Pherson Corp Inc., NJ